DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Nicole Yanosik, appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her two minor children, C.B. and J.B., and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} Appellant is the mother of C.B., born August 29, 2000, and J.B., born October 7, 2001. The biological father of the children did not participate in the permanent custody hearing below and is not a party to the present appeal.
 {¶ 3} According to the allegations in the complaint filed by CSB, the children were taken into custody by the Akron police pursuant to Juv.R. 6 on November 27, 2002. Reportedly, Appellant left C.B. with a man who had an outstanding warrant for his arrest. Appellant's residence was alleged to be unsafe, filthy, and without food. J.B. had been left with his paternal grandmother at the time. When Appellant returned to the home, she expressed her wish to leave the children with their father until she "got back on her feet." It was discovered, however, that the children's father also had outstanding warrants for his arrest on drug charges. CSB's complaint alleged that C.B. was abused, neglected, dependent, and endangered, and that J.B. was neglected and dependent. Following a hearing, emergency temporary custody was awarded to the agency.
 {¶ 4} The matter proceeded to adjudication and disposition, where the parties stipulated to a finding of dependency and agreed to place the children in the temporary custody of CSB. The trial court adopted a case plan which addressed concerns regarding housing, parenting skills, and substance abuse.
 {¶ 5} In October 2003, CSB moved for permanent custody. Appellant then moved for legal custody and also moved for a six-month extension of temporary custody in order to specifically address her housing situation. In granting the motion for extension, the trial court observed that Appellant had made significant progress on other areas of her case plan. A second six-month extension was later granted. On November 10, 2004, CSB again moved for permanent custody. Following a hearing, the trial court denied Appellant's motion for legal custody and granted CSB's motion for permanent custody.
 {¶ 6} Appellant timely appeals and assigns one error for review.
 II. ASSIGNMENT OF ERROR
"THE VERDICT GRANTING PERMANENT CUSTODY OF APPELLANT'S CHILDREN TO [CHILDREN] SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE; THE EVIDENCE IS NOT LEGALLY SUFFICIENT TO SUPPORT THE VERDICT."
 {¶ 7} Appellant contends that the judgment of the trial court was against the manifest weight of the evidence.
 {¶ 8} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 9} The trial court found that the first prong of the permanent custody test was satisfied because C.B. and J.B. had been in the temporary custody of CSB for at least 12 of the prior 22 months. Appellant does not contest that finding. She challenges only the finding as to the best interest prong of the permanent custody test.
 {¶ 10} When determining whether a grant of permanent custody is in the children's best interest, the juvenile court must consider the following factors:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]
"(5) Whether any of the factors in divisions (E) (7) to (11) of this section apply in relation to the parents and child." R.C.2151.414(D)(1)-(5).
Although the trial court is not precluded from considering other relevant factors, the statute explicitly requires the court to consider all of the enumerated factors. See In re Smith (Jan. 2, 2000), 9th Dist. No. 20711; see, also, In re Palladino, 11th Dist. No. 2002-G-2445, 2002-Ohio-5606, ¶ 24.
 {¶ 11} The best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Inre Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 12} Appellant argues that the judgment of the trial court was against the manifest weight of the evidence. When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. In re Ozmun (Apr. 14, 1999), 9th Dist. No. 18983. In determining whether a criminal conviction is against the manifest weight of the evidence:
"The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 13} Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karchesv. Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
 {¶ 14} Accordingly, before an appellate court will reverse a judgment as being against the manifest weight of the evidence in this context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
 {¶ 15} On appeal, Appellant specifically contends that CSB failed to prove that the permanent custody motion should be granted because she had substantially complied with the objectives of her case plan. Substantial compliance with a case plan, in and of itself, does not prove that a grant of permanent custody to an agency is erroneous. In re Watkins v.Harris (Aug. 30, 1995), 9th Dist. No. 17068. Moreover, while evidence of case plan compliance is usually relevant to the trial court's best interest determination, it is not dispositive of it. See e.g. In re A.A., 9th Dist. No. 22196, 2004-Ohio-5955, at ¶ 9; In re Atkins (Nov. 18, 1998), 9th Dist. No. 19037. Rather, the termination of parental rights is governed by R.C. 2151.414, and the proper focus of a best interest determination is on the specific factors listed in R.C. 2151.414(D)
 {¶ 16} Furthermore, the record does not support Appellant's claim that she substantially complied with her case plan. While Appellant completed a parenting course, and took several other courses in the Community Based Correctional Facility Program at Oriana House,[1] she has failed to obtain satisfactory housing and has not had any contact with her children in seven months due to on-going legal problems. Therefore, it cannot be cannot be concluded that Appellant substantially complied with her case plan.
 {¶ 17} We, therefore, proceed to consider the evidence regarding the best interest factors as stated in R.C. 2151.414(D). The first best interest factor requires consideration of the relevant personal interactions and interrelationships of the children. Here, the primary relationship of concern is that of the children with their mother. Appellant testified in her own behalf that she loves her children very much. She admits CSB was right to take custody of her children when they did, but believes she has learned a lot since then and can now take proper care of them.
 {¶ 18} According to Alexis Jemison-Knott, the CSB caseworker assigned to this case, Appellant has always verbalized the intent to regain custody of her children, but at the same time, she has demonstrated a lack of commitment to remedy the conditions that brought the children into care. Despite obtaining an extension of temporary custody in order to address the housing component of her case plan, and more than two years of involvement with CSB, Appellant still does not have satisfactory housing. In addition, at the time of the permanent custody hearing, Appellant had not seen her children for seven months, and her previous visits were very inconsistent — attending perhaps one-third to one-half of the scheduled visits. Appellant attributes part of the problem to difficulties in communicating with CSB, but also admits that she has been "running from the law," apparently in an attempt to avoid the consequences of a probation violation.
 {¶ 19} While the caseworker reported that Appellant generally interacted well with her children at visitations, used appropriate discipline, and shared mutual affection, there was also evidence that Appellant's inconsistency was having a very negative effect on the children. Even Appellant acknowledged that her absence had "affected [the children] severely" and is "probably ripping them apart."
 {¶ 20} In addition, there was little evidence of a continuing positive relationship between the children and other relatives. The children's father has had no contact with the children since July 2004, and had little contact before that. He made no progress on his case plan and provided no child support. Nor was there evidence of a continuing and positive relationship with the maternal grandmother, the paternal grandmother or a paternal aunt.
 {¶ 21} Evidence was also presented as to the relationship of the children with the foster family. When the children first came into care, they both had developmental and behavioral issues. Both presented with temper tantrums. C.B. exhibited self-injurious behaviors, such as head-banging, biting, and scratching. He also said things that elicited concern of past mistreatment, such as "[d]on't put me in the closet." CSB reported that J.B. required some physical therapy when he came into temporary custody. He was also said to exhibit dangerous behaviors.
 {¶ 22} By the time of the permanent custody hearing, both children had made significant improvements and were developmentally on track. The children and foster parents were said to be well-bonded and affectionate towards one another. The children addressed the foster parents as Mom and Dad. The guardian ad litem believes the foster parents are committed to the well-being of the children. She also reported that the children are generally doing very well, though they continue to exhibit some problems. Both of the children have problems stemming from the inconsistency of Appellant's visits. C.B. suffers from separation anxiety, and J.B. continues to have some problems with temper.
 {¶ 23} The wishes of these young children were expressed by Jana DeLoach, the guardian ad litem. She explained that while Appellant loves her children, she has not been able to "get things together." DeLoach also expressed concern with the negative effect that Appellant's inconsistency was having on the children. She emphasized that the children needed permanency, and she was concerned that Appellant cannot stay out of jail. DeLoach concluded that it would be in the bests interests of the children to be placed in the permanent custody of CSB.
 {¶ 24} The third best interest factor requires consideration of the custodial history of the children. The children were apparently in the care of Appellant until November 2002, when C.B. was 27 months old and J.B. was 13 months old. The children then came into temporary custody and have been in the care of a single foster family for more than two years. The caseworker testified that there were concerns even before the children came into temporary custody. For example, in February 2002, Appellant was sent to a juvenile detention facility for a domestic violence incident involving the children's father. In June 2002, Appellant was said to have left the children at a friend's home for nine hours without formula, bottles, diapers, or clothing.
 {¶ 25} During the pendency of the present case, Appellant had reportedly been convicted of child endangering, convicted of passing bad checks (forgery), held in contempt for failing to appear and failing to comply with probation, and spent six months in Oriana House for probation violations. She was released from jail on a contempt charge just one week prior to the permanent custody hearing. As explained above, Appellant's visits with the children were inconsistent at first, and later stopped entirely. At the time of the permanent custody hearing, she had not seen her children for seven months.
 {¶ 26} As to the fourth best interest factor, there was evidence before the trial court that the children were in need of a legally secure placement and that there were no suitable friends or relatives willing to provide for their care. The caseworker indicated that the inconsistent visits by Appellant had led to regression in the behavior of the children, including bed-wetting, and waking up and crying in the middle of the night. Significantly, Appellant has not demonstrated a commitment to her children or followed through with efforts to remedy her situation even though she knows that this had caused the children great distress.
 {¶ 27} The caseworker explained that she had worked with Appellant for more than two years on this case, and that Appellant had been involved in Mentoring Mothers before that. While the caseworker believes Appellant loves her children, there is much that Appellant needs to address personally before she can provide care for the children. The foster parents have provided a good home for the children and have expressed an interest in adopting them. The caseworker stated that permanent custody is in the best interests of the children and is the only means to achieve a legally secure placement.
 {¶ 28} As to the fifth best interest factor, Appellant was reportedly convicted of child endangering as a result of events at the time the children were removed from her care.
 {¶ 29} Upon review, the record demonstrates that there was ample evidence before the trial court from which it could conclude that permanent custody was in the children's best interests. The record does not support a conclusion that the trial court clearly lost its way and created a manifest miscarriage of justice. Consequently, the trial court did not err in denying the motion for legal custody, terminating Appellant's parental rights, and placing C.B. and J.B. in the permanent custody of CSB. Appellant's assignment of error is overruled.
 III. {¶ 30} Appellant's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J. Carr, J. concur
[1] While at Oriana House, Appellant completed programs in chemical dependency, aftercare, financial management, and cognitive skills. The parties disputed whether the Oriana House programs could satisfy some of Appellant's case plan requirements, and there was also confusion as to whether Appellant was required to participate in substance abuse counseling. In any event, it is clear that Appellant has not substantially complied with her other case plan requirements.