[Cite as *In re M.C.*, 2014-Ohio-5190.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

IN RE: :

                                       CASE NOS. CA2014-07-152

      M.C., et al. :                      CA2014-07-162

                                              CA2014-07-163

                             :                      CA2014-07-164

                             :            O P I N I O N

                                                 11/24/2014

                             :

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2012-0155

Mary Lou Kusel, 6 South Second Street, Suite 834, Hamilton, Ohio 45011, Guardian Ad Litem

Dawn S. Garrett, 9435 Waterstone Boulevard, Suite 140, Mason, Ohio 45249, for appellant

Michael T. Gmoser, Butler County Prosecuting Attorney, Kimberly L. McManus, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

    **M. POWELL, J.**

    {¶ 1} Appellant, M.M. (Mother), appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of her four children to the Butler County Department of Jobs and Family Services (the Agency).[1]

---

1. The respective fathers of the children are not parties to this appeal.

{¶ 2} Mother is the parent of two boys, D.M. (born in 2004) and J.C. (born in 2009), and two girls, M.C. (born in 2006) and K.C. (born in 2007). On March 23, 2012, Mother dropped off her children at the Agency and signed a Voluntary Agreement for Custody (VAC), thereby temporarily relinquishing custody of her four children to the Agency.[2] At the time, Mother was working but was homeless. The children were subsequently placed together with a foster family. Following their placement, all four children were given an inhaler for asthma. The lungs of M.C., in particular, were filled with smoke. All four children also had multiple cavities. The decay in their teeth was so significant it ultimately required a referral to a specialist. In particular, D.M. required crowns and a sealant; several of M.C.'s teeth were pulled out due to abscessed infections. Both K.C. and J.C. had speech issues, reportedly speaking "gibberish." The children have lived with the foster family since March 23, 2012.

{¶ 3} On April 16, 2012, the Agency filed a complaint alleging that the children (who were then eight, five, four, and two years old) were neglected and dependent. On May 15, 2012, the juvenile court adjudicated the children dependent and awarded temporary custody to the Agency. A case plan was implemented to reunify Mother with her children.

{¶ 4} The case plan required Mother to obtain and maintain stable housing and income, participate in a psychological evaluation through Children's Diagnostic Center (CDC) and follow all recommendations, visit her children on a weekly basis, and participate in a parenting program once she obtained housing. An amended case plan filed in September 2013 also required Mother to participate in a substance abuse assessment and follow all recommendations, as Mother was now reporting she had resumed using marijuana.

{¶ 5} On June 7, 2013, the Agency moved for permanent custody of the children. A

---

2. This was the second time Mother signed a VAC. Mother also signed a VAC in 2008 but regained custody of her children a few months later. The record also shows the Agency financially helped Mother in November 2011 by paying $419.47 to have the water turned back on in Mother's home.

hearing on the motion revealed that during the 23-month period between the day Mother dropped off the children at the Agency and the permanent custody hearing, Mother (1) never obtained stable housing and instead lived with friends, relatives, and in homeless shelters, (2) was no longer employed but was receiving a small monthly income from Social Security, (3) completed a psychological evaluation but thereafter only occasionally attended individual counseling and was twice terminated from individual counseling for lack of attendance, (4) admitted she had resumed using marijuana, thrice tested positive for marijuana, but failed to complete a substance abuse assessment, (5) failed to consistently attend weekly visitation, and (6) was never able to participate in a parenting program due to her unstable housing situation. In her post-hearing report, the children's guardian ad litem (GAL) recommended that permanent custody be granted to the Agency.

{¶ 6} By decision filed on April 7, 2014, the magistrate found by clear and convincing evidence that D.M., M.C., K.C., and J.C. had been in the temporary custody of the Agency for 12 or more months of a consecutive 22-month period, and that is was in the best interest of the four children to grant permanent custody to the Agency. Mother filed objections to the magistrate's decision. On June 2, 2014, the juvenile court overruled the objections and affirmed the magistrate's decision.

{¶ 7} Mother appeals, raising one assignment of error:

{¶ 8} THE COURT'S DECISION AND ORDER OF PERMANENT CUSTODY AND DENIAL OF LEGAL CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDINGS AND THE EVIDENCE PRESENTED FAILED TO MEET THE REQUISITE CLEAR AND CONVINCING STANDARD.

{¶ 9} Mother generally argues that the juvenile court's decision granting permanent

custody to the Agency was not in the best interest of D.M., M.C., K.C., and J.C., and that such finding was against the manifest weight of the evidence.

{¶ 10} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16 (7th Dist.). A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re Rodgers*, 138 Ohio App.3d 510, 520 (12th Dist.2000).

{¶ 11} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D).

{¶ 12} Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re E.B.*, 12th Dist. Warren Nos. CA2009-10-139 and CA2009-11-146, 2010-Ohio-1122, ¶ 22. Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *In re T.D.*, 12th Dist. Preble No. CA2009-01-002, 2009-Ohio-4680, ¶ 15.

{¶ 13} In the case at bar, the juvenile court found that D.M., M.C., K.C., and J.C. had been in the temporary custody of the Agency for more than 12 months of a consecutive 22-month period as of the date the Agency filed its permanent custody motion. Mother does not dispute this finding. The record supports this finding. The second prong of the permanent custody test is therefore satisfied.

{¶ 14} Mother, however, disputes the juvenile court's finding that granting permanent custody of D.M., M.C., K.C., and J.C. to the Agency was in the children's best interest. Specifically, Mother argues that given the fact (1) she was receiving social security with which to support her children, (2) she was ready and willing to provide for them, (3) she had lived in the same apartment for a year, (4) her roommate was employed and willing to help with the children, and (5) it was never demonstrated how her failure to complete counseling made her unsafe for her children to return home, the juvenile court erred in granting permanent custody to the Agency. Mother cites *In re Alyssa C.*, 153 Ohio App.3d 10, 2003-Ohio-2673 (6th Dist.), for the proposition that "a parent's failure to adhere to or complete a case plan is not, in itself, a ground for the termination of parental rights."

{¶ 15} When considering the best interest of a child in a permanent custody hearing, the juvenile court is required under R.C. 2151.414(D)(1) to consider all relevant factors, including, but not limited to: (a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (b) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (c) the custodial history of the child; (d) the child's need for a legally secured permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (e) whether any of the factors in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and

child.

{¶ 16} With regard to R.C. 2151.414(D)(1)(a), the juvenile court found that the children's respective fathers had no contact at all with their children during the proceedings, did not participate in case plan services, and never appeared in court to contest the motion for permanent custody. The record supports these findings. D.M. has no relationship with his father. M.C., K.C., and J.C. have no relationship with their father.

{¶ 17} The juvenile court found that the children have been living together with the same foster family for nearly two years, there is a bond between the children and the foster family, and "their needs have been well met, including serious dental health issues, speech therapy, and mental health counseling." The record shows that the children no longer have dental issues and no longer need counseling. J.C., the youngest, continues to have speech issues but receives speech therapy. Michael Hill, the children's caseworker, testified that the children are happy and content in the foster family and show physical affection with hugs and "I love you." The foster mother testified that she loves the children, thinks of them now as her own, and that she and her husband are interested in adopting them. She also testified that about a month before the permanent custody hearing, the children started calling her "mom" rather than by her first name. She spoke highly of the children and their personality.

{¶ 18} The juvenile court found that there was a bond between Mother and the children, interaction is good during visitation, and the children are excited to see Mother and sad when she does not come to visitation. The court found that Mother missed several weekly visitation, in part due to transportation issues, and that she eventually requested bi-weekly visits. There are no longer phone contacts between Mother and the children, in part due to the children's lack of interest in the phone calls.

{¶ 19} Throughout the proceedings, Mother's visitation remained supervised. Hill and

Rhonda Sneed, who supervises Mother's visitation, testified that there is a bond between Mother and the children, Mother pays individual attention to the children during visitation, and the latter are happy and laugh and smile during visitation. The record shows that between April 2012 and August 2013, Mother missed 16 weekly visits. Visitation was suspended in August 2013 after Mother missed four consecutive visits but resumed in November 2013 on a bi-weekly level at Mother's request. Mother is more consistent with her bi-weekly visitation.

{¶ 20} Mother testified she feels very bonded to her children, has a great relationship with them, and loves them "exceptionally." She testified she missed some of the weekly visits because of transportation issues. The record shows that transportation issues plagued Mother throughout the proceedings: her car was stolen twice; and the second time it was stolen, it blew up with all of her possessions after it was involved in a chase with the police. In addition, because she generally lived in Hamilton County, the Agency was unable to help her with transportation.

{¶ 21} With regard to the children's wishes under R.C. 2151.414(D)(1)(b), the juvenile court did not conduct an in camera interview of the children but noted the GAL's recommendation that permanent custody be granted to the Agency.

{¶ 22} With regard to R.C. 2151.414(D)(1)(c), the juvenile court found, and Mother does not dispute, that the four children have been in the temporary custody of the Agency for more than 12 months of a consecutive 22-month period. The juvenile court also found, and Mother does not dispute, that the factors in R.C. 2151.414(E)(7) to (11) were not applicable to this case. *See* R.C. 2151.414(D)(1)(e).

{¶ 23} With regard to R.C. 2151.414(D)(1)(d), the juvenile court found that Mother had not complied with most of the requirements of the case plan, and that the children's need for a legally secure placement could not be achieved without a grant of permanent custody to

the Agency. Specifically, the court found that Mother did not make any progress in addressing her mental health, substance abuse, and housing and income issues, and that given her history, Mother would be unable to do so in the foreseeable future.

{¶ 24} As stated earlier, the case plans required Mother to obtain and maintain stable housing and income, participate in a psychological evaluation and follow all recommendations, participate in a substance abuse assessment and follow all recommendations, and participate in a parenting program once she obtained housing.

{¶ 25} This case arose in March 2012 when Mother temporarily relinquished custody of her children to the Agency because she was homeless. Throughout the proceedings, Mother was unable to obtain stable and permanent housing. Mother testified she was living with a friend, Anthony Estes, in his one-bedroom apartment in Cincinnati, Ohio, and had been doing so, on and off, for at least a year. However, the nature of their relationship is unclear: Mother testified they were no longer romantically involved whereas Estes denied they were ever romantically involved. Yet, Estes testified that Mother sometimes sleeps in his bed, he intends to marry her and hopes she does too, he is willing to help with the children, and he did not start looking for a bigger home until a month before the permanent custody hearing because he is waiting for Mother "to make up her mind" regarding their relationship. There is no approved home study for Estes. No evidence was presented regarding the children's relationship, if any, with Estes.

{¶ 26} Mother is no longer employed but receives $850 a month from Social Security for anxiety and other unspecified medical conditions. She does not receive other benefits or food stamps. Mother testified she would use her monthly benefits to support her children and believes she can provide for them. She testified, however, that she needed more time to find suitable housing. As stated earlier, Mother was never able to participate in a parenting

program due to her unstable housing situation. In addition, because she was generally living with Estes in Hamilton County, the Agency was unable to help her with transportation, which in turn, affected her attendance with regard to visitation and counseling.

{¶ 27} Mother never completed a substance abuse assessment despite reporting she had resumed using marijuana. She testified, however, that an assessment was scheduled for February 13, 2014, two days after the permanent custody hearing. The record shows that Mother tested positive thrice for marijuana in 2013, refused to be tested on two occasions, and knew she would test positive for marijuana a month before the permanent custody hearing. Mother testified she does not believe she would benefit from a substance abuse treatment or counseling.

{¶ 28} Mother completed her psychological evaluation in early October 2012. At that time, Mary Oenbrink, a psychology assistant with CDC Mental Health Services and Mother's therapist, diagnosed Mother with chronic post-traumatic stress disorder, major depressive disorder, and cannabis dependence in sustained full remission. The evaluation recommended individual counseling and a psychiatric evaluation. Mother began individual counseling in December 2012, attended two sessions that month, did not attend at all in January 2013, and attended only one session in February 2013. Mother was consequently terminated from counseling on February 21, 2013. Oenbrink testified that by the time she saw Mother in February 2013, Mother's stress level had increased significantly, to the point that Mother had recently taken herself to the hospital because she was "so stressed-out about her situation." Mother subsequently tried to receive individual counseling somewhere else but was financially unable to do so.

{¶ 29} In June 2013, Mother was once again referred to CDC for individual counseling. Oenbrink testified that when she met Mother on June 20, 2013, Mother "had deteriorated

significantly in her mental health status [and] was displaying some paranoia, significant sleep disturbances, distractibility, psychomotor agitation, and excessive talking." Mother "was in a lot of distress at that point, and [Oenbrink] was very worried about her." Mother had also resumed using marijuana. Oenbrink consequently changed Mother's diagnosis to Bipolar I Disorder. Mother only attended two individual counseling sessions during the summer and participated in a psychiatric evaluation in August 2013. Mother was encouraged both in August and September 2013 to go to the hospital due to her mental instability but she did not go. On September 5, 2013, she was once again terminated from individual counseling for poor attendance.

{¶ 30} Oenbrink testified that over the course of her therapy sessions, Mother's mental health and substance abuse issues worsened. Oenbrink also testified she was concerned Mother would not be able to provide for her children if she were to regain custody because of her unstable mood and finance, housing, and transportation issues. Likewise, Hill testified the Agency's primary concern with Mother regaining custody of her children was Mother's overall instability given her failure to address her mental health and substance abuse issues and her lack of housing.

{¶ 31} Mother testified that she missed individual counseling sessions because she was in the hospital for a migraine, she was assaulted, and her car was stolen for the second time. She believed she was making progress when counseling was terminated the first time. Mother, however, denied suffering from the mental health conditions testified to by Oenbrink. She also testified she would not benefit from any additional mental health treatment or from any substance abuse treatment. Mother further testified she no longer needed counseling as she had been going to counseling since she was 13 years old after being sexually abused by an acquaintance.

**{¶ 32}** Notwithstanding her failure to comply with most of the requirements of the case plans, Mother nevertheless asserts that "a parent's failure to adhere to or complete a case plan is not, in itself, a ground for the termination of parental rights," and cites *In re Alyssa C.*, 2003-Ohio-2673, in support. However, "'substantial compliance with a case plan, in and of itself, does not prove that a grant of permanent custody to an agency is erroneous. Moreover, while evidence of case plan compliance is usually relevant to the [juvenile] court's best determination, it is not dispositive of it.'" *In re D.R.*, 12th Dist. Butler No. CA2009-01-018, 2009-Ohio-2805, ¶ 19, quoting *In re C.B.*, 9th Dist. Summit No. 22635, 2005-Ohio-4364, ¶ 15.

**{¶ 33}** The juvenile court found that Mother was the only parent before the court and that no one, family or otherwise, sought custody of the children. As stated earlier, the children's fathers have not been involved in the permanent custody proceedings and the children have no relationship or contact with their respective fathers. A home study conducted on Mother's paternal aunt in California was denied on the ground the aunt could not financially provide for the children. Mother never submitted Estes' name to the Agency as a placement option.

**{¶ 34}** In light of the foregoing, and after a thorough review of the record, we find that the juvenile court's decision granting permanent custody to the Agency is in the best interest of D.M., M.C., K.C., and J.C., and not against the manifest weight of the evidence. "A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security." *In re Keaton*, 4th Dist. Ross Nos. 04CA2785 and 04CA2788, 2004-Ohio-6210, ¶ 61. A parent is afforded a reasonable, not an indefinite, period of time to remedy the conditions causing the children's removal. *In re L.M.*, 11th Dist. Ashtabula No. 2010-A-0058, 2011-Ohio-1585, ¶ 50.

{¶ 35} Mother's assignment of error is overruled.

{¶ 36} Judgment affirmed.

RINGLAND, P.J., and HENDRICKSON, J., concur.