DECISION AND JOURNAL ENTRY
{¶ 1} Joyce L.-A. ("Mother") has appealed from the judgment of the Summit County Court of Common Pleas, Juvenile Division, that adopted the decision of a magistrate and placed her child, CM., in the legal custody of her foster parents. This Court affirms.
 I {¶ 2} CM., born on November 24, 1998, is the daughter of Mother and Richard M., deceased. The Summit County Children Services Board ("CSB") became involved with the family upon allegations that CM. had been the victim of sexual abuse, that Mother has a history of mental health problems and substance abuse, and that Mother may be evicted from her apartment. Mother's three grown children had been removed from her care by CSB at various times. Eight-year-old CM. had previously been in the custody of her father and had also been in CSB custody on at least one prior occasion. The agency filed a complaint in juvenile court on April 18, 2007, alleging that CM. was abused, neglected, and dependent. *Page 2 
 {¶ 3} Pursuant to stipulations, CM. was adjudicated abused and dependent. At the time of the adjudication, the court interviewed CM., who disclosed numerous incidents of sexual abuse perpetrated on her by an eleven or twelve-year-old female cousin whose home she and Mother frequented. CM. said that the older child put a stick in her vagina and also repeatedly punched her in that area. The trial court indicated that Mother initially denied knowledge of the abuse, but later admitted such knowledge. The trial court also indicated that Mother continued to take CM. to the home despite CM. alerting Mother to the abuse and Mother failed to supervise the children when they were together.
 {¶ 4} The trial court granted temporary custody to CSB and the agency placed CM. with foster parents, Charles and Dorothy H. The court also adopted a case plan that required Mother to address substance abuse, mental health issues, and parenting skills, and also required her to be able to meet the basic needs of her child.[1]
 {¶ 5} On February 13, 2008, CSB sought a final dispositional order placing CM. in the legal custody of the child's foster parents. Shortly thereafter, Mother moved for a six-month extension of temporary custody. Both matters came before the magistrate for hearing. At the conclusion of the hearing, the magistrate granted CSB's motion for legal custody, denied Mother's motion for an extension of temporary custody, and discussed CSB's reasonable efforts to return the child to her home. Mother filed an objection to the magistrate's decision. The trial court overruled the objection and adopted the magistrate's decision with modifications. Mother has timely appealed and has assigned one error for review. *Page 3 
 II Assignment of Error "THE TRIAL COURT ABUSED ITS DISCRETION BY OVERRULING APPELLANT-MOTHER'S TIMELY OBJECTION TO THE MAGISTRATE'S DECISION."
 {¶ 6} In her sole assignment of error, Mother has essentially argued that the trial court erred when it adopted the decision of the magistrate to grant legal custody of CM. to the foster parents and when it modified the decision of the magistrate to find that CSB had made reasonable efforts to return the child to her mother.
 {¶ 7} Juv. R. 40 governs proceedings before a magistrate and the juvenile court's duties in adopting or rejecting a magistrate's rulings. Juv. R. 40(D)(3)(b)(iv) provides that, except for a claim of plain error, a party forfeits the right to assign error on appeal with respect to the trial court's adoption of any factual finding or legal conclusion "unless the party has objected to that finding or conclusion as required by Juv. R. 40(D)(3)(b)." Such objections must be specific and all grounds must be stated with particularity. Juv. R. 40(D)(3)(b)(ii). When the trial court rules on objections to a magistrate's decision, it "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Juv. R. 40(D)(4)(d).
 {¶ 8} Much of Mother's appellate argument is based on a claim of substantial compliance with her case plan. Case plan compliance, however, is no more determinative of a decision regarding legal custody than it is determinative of a decision regarding permanent custody. SeeIn re C.B., 9th Dist. No. 22635, 2005-Ohio-4364, at ¶ 15. Legal custody decisions must, instead, be based on the best interest of the child.In re N.P., 9th Dist. No. 21707, 2004-Ohio-110, *Page 4 
at ¶ 23. Case plan compliance may be considered, but only insofar as evidence of such compliance is relevant to the factors inherent in a proper best interest determination.
 {¶ 9} While Ohio courts have held that legal custody decisions must be based on the best interest of the child, the Ohio Revised Code does not provide a test or set of criteria tailored to the disposition of legal custody motions. This Court has held that the statutory best interest test designed for a permanent custody situation may provide some guidance for trial courts making legal custody decisions. In reT.A., 9th Dist. No. 22954, 2006-Ohio-4468, at ¶ 17. That test includes a consideration of various factors including: (1) the child's interaction with her parents, siblings, relatives, and foster caregivers, (2) the child's wishes, which may be expressed by the guardian ad litem, (3) the child's custodial history, and (4) the need for a legally secure permanent placement. R.C. 2151.414(D). Accordingly, in reviewing this matter, this Court will consider evidence concerning the factors in R.C. 2151.414(D) as well as other evidence relevant to the best interest of CM.
 {¶ 10} The record reveals that Mother gave birth to CM. prematurely, at 26 weeks, and the child weighed only one pound and seven ounces. At eleven days, CM. needed surgery for gangrene of her intestines. As a result, she continues to be on a very strict diet. According to Mother, a doctor suspected some sexual abuse of CM. in 2005 during an unrelated medical visit. CM. was referred for therapy at that time. When CSB became involved in the present matter, CM. was assessed for sexual abuse at the Care Center of Children's Hospital. Subsequently, she was referred to Teresa Berry, a counselor with specialized training in trauma treatment at Northeast Ohio Behavioral Health. Ms. Berry testified that CM. told her that she had repeatedly been sexually abused by her female cousin while she had been living with Mother. CM. adamantly insisted that she told her mother, but the abuse did not stop. *Page 5 
 {¶ 11} Ms. Berry explained that when she first began working with CM., the child had a number of trauma problems, including nightmares and anxiety issues. She was scratching herself, pulling out her eyebrows, and soiling herself. Ms. Berry said the behavior was extreme, but common for trauma survivors. CM. was diagnosed with adjustment disorder with anxiety and was also found to have some symptoms of post traumatic stress disorder. According to Ms. Berry, some of the child's more severe symptoms deescalated fairly quickly after she was placed with the foster family, and CM. has continued to improve. Ms. Berry believed that it would be helpful for CM. to continue in counseling, however.
 {¶ 12} Ms. Berry stated that she had been trying to meet with Mother since September 2007, but has not been successful. The counselor explained that CM. needs to be in a home where she has structure, safety, and consistency. The foster parents were said to provide good structure and appropriate limits. Ms. Berry also testified that CM. has expressed love for Mother and sadness at the end of their visits, but she has also shown a positive attachment to her foster family and feels safe with them. When asked whether she felt safe with Mother, CM. said "I'm not sure."
 {¶ 13} Mother's counseling records demonstrated that she is in treatment at Portage Path Behavioral Health for depression and anxiety. According to those records, Mother reported a diagnosis of bi-polar disorder, post traumatic stress disorder, auditory hallucinations, chronic alcohol and drug addiction, and a history of sexual abuse from age six to 16. Counselor Berry added that Mother reported that she had been raised through CSB with foster parents. For her part, Mother claims she no longer hears voices, regularly attends Alcoholics Anonymous meetings, and only used drugs to numb depression and grief when her 19-year-old daughter died *Page 6 
following an automobile accident in June 2007. As of January 2008, Mother was said to be fairly stable.
 {¶ 14} Vicky Chambers, the CSB visitation aide for the last three months, testified that Mother attended visitation fairly regularly during that time and interacted appropriately with her daughter. Mother brought healthy snacks and engaged CM. in activities. Visits had not progressed beyond moderately supervised status at the visitation center.
 {¶ 15} Sou'ad M., the 21-year-old half-sister of CM., also testified. Sou'ad stated that she lived for three years with CM.; the children's shared father, Richard M.; and Mother. She described the home atmosphere as dysfunctional due to violence, alcohol use, and drug use by both Mother and their father. She testified that while CM. lived with Mother, CM. had poor hygiene, dirty clothing, and was malnourished. Now that CM. is living with the foster parents, she is well-groomed, attending school regularly, and doing well academically. Sou'ad visits her there and believes that it would be best for CM. to remain in the care of the foster parents. Sou'ad testified that Mother has a history of maintaining sobriety for a short while and then returning to alcohol and drug use, with accompanying violence. She stated that Mother was drinking and dancing on the night of C.M.'s premature birth.
 {¶ 16} Mother's attorney attempted to cast doubt on the credibility of Sou'ad, challenging her memory and motivation. In addition, Mother denied Sou'ad's claim that she had frequent relapses into drug and alcohol use. However, the guardian ad litem testified that Sou'ad's testimony was consistent with what Mother's other children had told her.
 {¶ 17} Marcia Korane, the CSB caseworker assigned to this case, testified that Mother's progress has been minimal and recent. Mother has maintained only two months of documented sobriety and her visitation has only been consistent for the last two and one-half months. Her *Page 7 
attendance in counseling has been inconsistent. Ms. Korane also testified that CM. is doing well in her foster placement. CM. and the foster parents have an affectionate relationship and the foster parents have structure and limits in their household. Ms. Korane stated her belief that it was in the best interest of CM. to be placed in the legal custody of the foster parents.
 {¶ 18} Mother testified on her own behalf. She stated that she is compliant with her case plan and claimed that she regularly attends individual counseling, provides drug screens, and attends Alcohol Anonymous meetings. She believes she will have independent housing within the next six months. Mother testified that she had four years of sobriety and then relapsed in mid-2007. She stated that she has been sober since October 29, 2007. She also admitted that she previously underwent substance abuse treatment in 2002. She was convicted of cocaine possession in mid-2007 and is presently under community control. Mother was incarcerated for failing to attend a counseling session that was part of her community control when she chose to attend visitation with her daughter instead. She has convictions for driving under the influence in 1998, domestic violence in 2000, and disorderly conduct. Mother suggested that CM. was born prematurely because she fell in a parking lot.
 {¶ 19} Jill Fankhouser, the guardian ad litem, testified that CSB had removed Mother's three older children from her care in the past. Unfortunately, the record is unclear on the details, but none of the removals involved the termination of Mother's parental rights and some removals were voluntary. One child was placed with his or her father and another was placed in a planned permanent living arrangement. The guardian ad litem was concerned with Mother's lack of independent housing and her continued drug use. She testified that although Mother has made some improvement in the last few months, there is a long-term pattern of problems and *Page 8 
instability. She stated that she would be very concerned if CM. were returned to Mother. She believes that it is in C.M.'s best interest to be placed in the legal custody of the foster parents.
 {¶ 20} At the time of the hearing, CM. had been in the custody of CSB and placed with this foster family for approximately one year. CM. had been placed with the same foster family for a period of several months seven years earlier. The record also indicates that CM. had been in the custody of her father prior to his death, but it is unclear how long that arrangement existed. Upon this record, this Court does not conclude that the trial court erred when it granted CSB's motion for legal custody to the foster parents.
 {¶ 21} Mother has also challenged the trial court finding that CSB had made reasonable efforts to reunify CM. with her mother. In a reasonable efforts determination, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. In re Myers, 4th Dist. No. 02CA50, 2003-Ohio-2776, at ¶ 18. The trial court found that this was the second time CM. had been in the custody of CSB. It further found that the agency created a case plan specific to Mother's needs, referred her to Portage Path Behavioral Health for a clinical evaluation and treatment, ordered drug screens, and provided her with a list of Alcoholics Anonymous meetings and contact people. As such, the court found that CSB had made reasonable efforts to return CM. to her mother's care. Upon review, this Court does not conclude that the trial court erred in so finding.
 {¶ 22} In addition, Mother has attempted to challenge the magistrate's decision granting legal custody to the foster parents in light of the magistrate's purported finding that CSB failed to make reasonable efforts. Such a challenge may not be brought in this Court because "[a]ny claim of trial court error must be based on the actions of the trial court, not on the magistrate's *Page 9 
findings or proposed decision." Mealey v. Mealey (May 8, 1996), 9th Dist. No. 95CA0093, at *2.
 {¶ 23} Mother has also complained about several matters that are not specifically assigned as error. None of them amounts to reversible error. First, Mother has complained that she was barred from introducing testimony regarding CSB's alleged placement of a foster child in the home of C.M.'s alleged perpetrator. CSB's objection to the question was sustained by the magistrate, but Mother did not attempt to proffer any evidence. Consequently, even if we were able to credit Mother's argument, this Court is unable to assign prejudice. Second, Mother has complained that the trial court has required future visits between Mother and CM. to be supervised and will permit the child's counselor to determine Mother's involvement in future joint counseling sessions. This Court does not find such requirements to constitute reversible error.
 {¶ 24} Finally, Mother has argued that her motion for legal custody should have been granted. Where the trial court finds that it is in the best interest of a child to be placed in legal custody as a permanent disposition, the trial court must necessarily deny an extension of temporary custody. Mother has acknowledged that her motion for a six-month extension was, in effect, a request to deny or delay a decision on the agency's motion for legal custody. Having found no error in the trial court order granting legal custody of CM. to the foster parents, we also find no error in the denial of Mother's motion for a six-month extension of temporary custody.
 {¶ 25} Upon consideration, this Court concludes that the trial court properly found that legal custody to the foster parents was in C.M.'s best interest and that the agency made *Page 10 
reasonable efforts to reunify CM. with her mother. Mother's sole assignment of error is overruled.
 III {¶ 26} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
CARR, J., DICKINSON, P. J. CONCUR
[1] A second case plan, filed on December 26, 2007, included the additional requirement that Mother should obtain housing and employment. That case plan, however, was labeled as an Original Case Plan. *Page 1