[Cite as *In re K.R.*, 2022-Ohio-1768.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| IN THE MATTER OF: K.R. 1 & K.R. 2 | JUDGES:<br>Hon. W. Scott Gwin, P.J.<br>Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J.<br><br>Case Nos. 2021 CA 000020 &<br>2021 CA 000021<br><br><br>O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Knox County Court of Common Pleas, Juvenile Division, Case Nos. 219-2028 & 219-2029 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 25, 2022 |
| APPEARANCES: | |


| | |
|---|---|
| For William Vinson, Father of K.R. 2 | For Knox County Department of Job and Family Services |
| NOEL B. ALDEN<br>Zelkowitz, Barry & Cullers, LTD.<br>103 South Main Street<br>Mount Vernon, Ohio 43050 | ASHLEY L. JOHNS<br>Knox Co. Dept. of Job & Family Services<br>117 E. High Street<br>Mount Vernon, Ohio 43050 |
| For Mother – Cheyenne Ramey | Guardian Ad Litem |
| CAROLYN FITTRO<br>Fittro Law, LLC<br>1335 Dublin Road, Suite #115F | ADAM O. JOHNSON<br>25 E. Waterloo Street<br>Canal Winchester, Ohio 43110 |

For Paternal Grandmother of K.R. 1

REBECCA STUMLER
130 E. Chestnut Street, Suite #301
Columbus, Ohio 43215

Trial Counsel for Mother – Cheyenne Ramey

PORTER R. WELCH
P.O. Box 125
Galena, Ohio 43021

*Hoffman, J.*

**{¶1}** In Knox App. No. 21CA000020, appellant Cheyenne Ramey ("Mother") appeals the October 27, 2021 Judgment Entry entered by the Knox County Court of Common Pleas, Juvenile Division, which granted legal custody of one of her minor children, K.R. 1 ("Child 1"), to the child's paternal grandmother, Jackie Stringfellow. In Knox App. No. 21CA000021, Mother appeals the same judgment entry, which granted legal custody of another of her minor children, K.R. 2 ("Child 2"), to William Vinson, Child 2's father. Appellee is Knox County Department of Job and Family Services ("KCDJFS").

STATEMENT OF THE FACTS AND CASE

**{¶2}** Mother and Zachary Metzger are the biological parents of Child 1. Metzger is deceased. Mother and William Vinson are the biological parents of Child 2.

**{¶3}** On March 3, 2019, KCDJFS filed complaints alleging Child 1, Child 2, and their two siblings ("Child 3" and "Child 4") were neglected and dependent. The complaints were based upon the deplorable home conditions, the children's poor hygiene, Mother's failure to properly supervise the children, her inability to wake up in the morning and care for the children, and her tumultuous relationship with her significant other. Mother gave birth to her fifth child ("Child 5") on March 5, 2019. On March 13, 2019, KCDJFS filed a complaint regarding Child 5 and a motion to combine the sibling cases, which the trial court granted on the same day.

**{¶4}** Following an incident of domestic violence between Mother and Scott Owens, the father of Child 5, KCDJFS filed an ex parte motion for temporary custody on April 9, 2019. The trial court conducted a shelter care hearing on April 11, 2019, denied KCDJFS's motion and returned the Children to Mother under a safety plan requiring 24/7 supervision of Mother. On April 26, 2019, KCDJFS filed a second motion requesting an

ex parte order of temporary custody based upon the inappropriate home conditions and the lack of supervision of the Children despite the safety plan. The trial court granted the motion and the Children were immediately removed from Mother's custody. At a shelter care hearing on April 29, 2019, the trial court continued temporary custody with KCDJFS. Following an adjudicatory hearing on May 3, 2019, the trial court returned the Children to Mother's custody under the protective supervision of KCDJFS. The trial court also granted Jackie Stringfellow visitation with Child 1.

{¶5}    At an adjudicatory hearing on May 15, 2019, Mother admitted the Children were dependent and the trial court dismissed the allegations of neglect. On May 20, 2019, KCDJFS filed a third motion again requesting an ex parte order of temporary custody based upon continued concerns of Mother failing to provide adequate supervision of the Children. Specifically, the Children were observed outside without adult supervision and Child 5 was observed in an unsafe sleeping situation, unattended by Mother. Child 1 was not included in the motion as he was on vacation with Stringfellow. Following a shelter care hearing on May 21, 2019, the trial court granted temporary custody of the Children to KCDJFS and ordered Mother and Owens to create a detailed supervision plan. KCDJFS filed an amended case plan for Mother and the Children on June 4, 2019. On the same day, Stringfellow filed a motion to be added as a party and a motion for temporary and/or legal custody with a statement of understanding. After a dispositional hearing on June 4, 2019, the trial court placed Child 1 in the temporary custody of Stringfellow with protective supervision to KCDJFS. The trial court continued temporary custody of the other four children with KCDJFS. The trial court ordered visitation at KCDJFS's discretion with input from the Guardian ad Litem ("GAL").

**{¶6}** The trial court conducted a review hearing on August 14, 2019. The trial court granted KCDJFS's request to transition Child 2 and Child 3 to Mother's custody with protective supervision beginning on August 19, 2019. All other dispositional orders remained in place. Child 2 and Child 3 were returned to Mother's custody on the specified date.

**{¶7}** Following a review hearing on November 21, 2019, the trial court maintained the status quo. In addition, the trial court issued a no contact order between the Children and James Looney, who was identified as the father of Child 4. Looney is a registered sex offender, however, Mother permitted him to have contact with the Children during visitation.

**{¶8}** On February 4, 2020, William Vinson filed a motion for ex parte temporary custody of Child 2, which the trial court summarily denied. The trial court conducted a hearing on the denial on February 6, 2020, and scheduled Vinson's motion for review. At a review hearing on February 26, 2020, the trial court granted KCDJFS's motion for an extension of involvement. KCDJFS advised the trial court Child 2 and Child 3, who were in Mother's custody, had educational and medical issues. In addition, KCDJFS was having ongoing issues with Mother truthfully reporting the status of the Children. KCDJFS also had concerns about the Children being injured during visitation with Mother. The trial court ordered Child 3 remain in Mother's custody, Child 1 remain in the temporary custody of Stringfellow, Child 2 be placed in the temporary custody of Vinson, and Child 4 and Child 5 remain in the temporary custody of KCDJFS. The trial court granted KCDJFS protective supervision of Child 1 and Child 2.

**{¶9}** On June 2, 2020, Mother gave birth to Child 6. Mother entered into a voluntary case plan related to Child 6. Child 6 was added to a subsequent amended case plan involving the Children. On June 4, 2020, Stringfellow filed a motion to be added as a party and motion for legal custody. The trial court conducted a review hearing on June 16, 2020, and maintained the status quo.

**{¶10}** KCDJFS filed a motion to modify disposition on July 8, 2020, requesting legal custody of Child 1 be granted to Stringfellow and legal custody of Child 2 be granted to Vinson. KCDJFS further requested the trial court terminate its involvement with Child 1 and Child 2 should the trial court grant the motion to modify. Via Judgment Entry filed September 28, 2020, the trial court maintained the status quo and scheduled a hearing on all pending motion for January 19, 2021.

**{¶11}** Via Journal Entry filed March 10, 2021, the trial court granted legal custody of Child 1 to Stringfellow and legal custody of Child 2 to Vinson. The trial court also granted Mother liberal and frequent parenting time with Child 1 and Child 2 with dates and times as agreed upon by the parties.  Mother appealed the March 10, 2021 judgment to this Court.

**{¶12}** On appeal, Mother argued the trial court failed to set forth the requisite findings of fact to support its reasonable efforts determination pursuant to R.C. 2151.419(B)(1). We agreed, vacated the decision of the trial court, and remanded for further proceedings. *Matter of K.R.,* 5th Dist. Knox No. 21CA000005, 2021-Ohio-3417.

**{¶13}** The trial court issued a new judgment entry on October 27, 2021, adding the required findings of fact to support its reasonable efforts determination pursuant to

R.C. 2151.419(B)(1). It is from the October 27, 2021 judgment of the trial court Mother prosecutes this appeal, assigning as error:

I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT IT WOULD BE IN THE BEST INTERESTS OF K.R.1 TO GRANT LEGAL CUSTODY OF HIM TO A RELATIVE.

II. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT THE KNOX COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES USED REASONABLE EFFORTS TOWARDS REUNIFICATION OF K.R.1 AND K.R.2 AND THEIR MOTHER.

I.

**{¶14}** In her first assignment of error, Mother argues the trial court erred in awarding legal custody of Child 1 to his paternal grandmother. R.C. 2151.353(A) provides, in pertinent part:

(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

* * *

(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a

complaint or motion filed prior to the dispositional hearing by any party to

the proceedings.

**{¶15}** Legal custody is significantly different from the termination of parental rights in that, despite losing legal custody of a child, the parent of the child retains residual parental rights, privileges, and responsibilities. *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 14, *citing* R.C. 2151.353(A)(3)(c). In such a case, a parent's right to regain custody is not permanently foreclosed. *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 12. For this reason, the standard the trial court uses in making its determination is the less restrictive "preponderance of the evidence." *Id.* at ¶ 9, *citing In re Nice*, 141 Ohio App.3d 445, 455, 751 N.E.2d 552 (2001). An award of legal custody must be supported by a preponderance of the evidence. "Preponderance of the evidence" means evidence that is more probable, more persuasive, or of greater probative value. *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7.

**{¶16}** "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree a juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.,* 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, *quoting In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. The juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th

Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, *citing In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, and the child's need for permanence. R.C. 2151.414(D)(1)(a)-(e).

**{¶17}** "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen*, 129 Ohio St.3d 417, 2011-Ohio-3361, ¶ 14. Accordingly, we review a juvenile court's decision to grant legal custody under an abuse-of-discretion standard. *In re H.J.H.*, 1st Dist. Hamilton No. C-180019, 2019-Ohio-116, ¶ 3. An abuse of discretion connotes more than an error of law or judgment; rather, it implies the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A juvenile court's decision regarding a child's best interest in a legal custody proceeding is not unreasonable if it is supported by competent, credible evidence. *In re A.W.,* 1st Dist. Hamilton No. C-140142, 2015-Ohio-489, ¶ 10 (Citation omitted).

**{¶18}** Mother argues the trial court erred in failing to consider the wishes of the child, as required by R.C. 2151.414(D)(1)(b). As noted earlier, the instant proceeding is a legal custody proceeding, not a permanent custody proceeding. In legal custody proceedings, the R.C. 2151.414(D) factors are instructive and provide guidance to the juvenile court. *In re R.B.*, 8th Dist. Cuyahoga No. 107709, 2019-Ohio-1656, 136 N.E.3d 42, ¶ 52. Unlike permanent custody hearings, during which it is mandatory for a juvenile court to consider the R.C. 2151.414(D) factors in making its best interests determination, a juvenile court is not mandated to consider or make specific findings with respect to

these factors in a legal custody hearing. *Id.* We therefore find the trial court did not err in failing to specifically consider the wishes of the child in determining best interests.

**{¶19}** Mother also argues KCDJFS failed to provide her with information on Child 1's medical appointments and his school information, in violation of Ohio Administrative Code 5101:2-38-08. Pursuant to this rule, certain information is to be distributed in a JFS 01443 "Child Education and Health Information" form when a child is placed in a substitute care setting. Mother did not testify at the hearing regarding her receipt of this form, nor did she raise the argument she did not receive this form in her response to KCDJFS's motion to modify custody. Rather, she testified generally she was not given information about Child 1's medical appointments and school information. On March 6, 2020, two months before the motion to modify custody was filed, a Notice of Semi-annual Review was filed. This notice indicated the JFS 01443 form was provided to the parents, and the form was signed by Mother. We find this sufficient record demonstration Mother was provided with the information required by OAC 5101:2-38-08.

**{¶20}** Finally, Mother argues the evidence did not support the trial court's finding it was in Child 1's best interests to be placed in the legal custody of his paternal grandmother. We disagree. The caseworker testified Mother's home was unclean. At her most recent home visit, the caseworker saw piles of clothing throughout the home, food particles on the floor, beds without sheets, and dirty diapers left on the floor of the bathroom and living room. There was testimony despite the domestic violence concerns with Scott Owens, Mother sporadically engaged in a relationship with him, admitting at trial she had sexual relations with him in the last month. There was testimony the children engage in violent and aggressive behavior with each other, including hitting, biting,

slamming each other into walls, and kicking each other.  Despite the fact Mother completed her case plan, she did not use the information from parenting classes to change the circumstances in her home.  Mother told the caseworker she did not believe in the parenting techniques she learned, and instead, her policy was "her house, her rules."   Tr. 189.  Mother failed to implement the information she received from the programs and services offered her, and as a result the conditions in the home did not improve.

{¶21} When Child 1 was last in Mother's care, Mother declined to get him vaccinated and neglected his dental care to the point where the child required major dental work.  Mother also failed to take Child 1 to the doctor for ongoing vomiting.  After Jackie Stringfellow obtained temporary custody of Child 1, she obtained recommended vaccines for him, took him to the dentist where he received eight crowns due to poor dental hygiene, and obtained medication for his intestinal issues.  When Child 1 was first placed in Stringfellow's care, he fell below the height and weight charts for Help Me Grow, but at the time of trial was in the 25th percentile for his age.

{¶22} Mother claimed Stringfellow did not notify her of school activities and medical appointments.  While mother initially testified she received no communication from Stringfellow since December 1, 2020, she later admitted to at least four text messages, and often responded to questioning regarding contact from Stringfellow by claiming she did not remember if she received information from Stringfellow.

{¶23}  Child 1's angry and violent behavior led Stringfellow to engage him in counseling, where he was diagnosed with severe anxiety.  Stringfellow noted his negative behavior problems increase after visits with Mother.   The caseworker and guardian ad

litem both testified at trial an award of legal custody to Stringfellow was in the best interests of Child 1.  We find the trial court's judgment is supported by a preponderance of the evidence presented at trial, and the trial court did not abuse its discretion in awarding legal custody to Stringfellow.

**{¶24}**  The first assignment of error is overruled.

II.

**{¶25}**  In her second assignment of error, Mother argues the trial court erred in finding KCDJFS made reasonable efforts to reunify the family, as required by R.C. 2151.419.

**{¶26}**  Prior to an award of permanent custody to a public children services agency, the trial court must determine whether the agency has made "reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." R.C. 2151.419(A)(1).

**{¶27}**  Although R.C. Chapter 2151 does not define "reasonable efforts," courts construe the term to mean " '[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed[.]' " *In re T.B.-W.*, 9th Dist. Summit No. 27544, 2015-Ohio-992, ¶ 15, *quoting In re C.F.*, 113 Ohio St.3d 73, 2017-Ohio-1104, ¶ 28, *quoting* Will L. Crossley, Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation, 12 B.U.Pub.Int.L.J. 259, 260 (2003). "In a reasonable efforts determination, the issue is not whether the agency could have done more, but whether it did enough to satisfy the

reasonableness standard under the statute*." In re C.M.,* 9th Dist. Summit No. 24380, 2009-Ohio-943, ¶ 21 (Citation omitted).

**{¶28}** The evidence presented at trial demonstrated Mother was offered services which included case planning, referrals for parenting classes, parenting time with the children, and ongoing contact with the case worker to attempt reunification. However, while Mother completed the case plan, she did not utilize the services provided her to improve her parenting skills or change the conditions of her home.

**{¶29}** The caseworker testified:

> [Mother] tries. I'm not going to lie to you. She tries. She does not want to admit that she is overwhelmed. She does not want to admit that she needs help. She does not want to admit that it is going to be an uphill battle with all of the children and whatever help you try to give to her she does not take the help. She thinks everyone is against her and they are not.

**{¶30}** Tr. 196.

**{¶31}** The caseworker concluded Mother was no farther ahead than she was prior to completing her case plan:

> [Mother], whenever I try to talk to her about anything, if I come to the home unsupervised, unannounced, I see the aggression that she puts towards me. She has wanted to call the cops on me. She called me the B

word, the F word because I'm in the home trying to help.  I have offered my opinion or my suggestion and it is always my house, my rules.  So I am willing to work with you if you are willing to work with me and [Mother] is not, my opinion.

**{¶32}**  Tr. 211-12.

**{¶33}**  Based on the testimony presented at trial, we find the trial court did not err in finding KCDJFS made reasonable efforts to reunify Mother with the children.

**{¶34}**  The second assignment of error is overruled.

**{¶35}**  The judgment of the Knox County Common Pleas Court, Juvenile Division, is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Wise, John, J. concur