[Cite as *In re A.M.*, 2024-Ohio-1152.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: A.M.

C.A. No. 30858

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. DN 22 01 0004

DECISION AND JOURNAL ENTRY

Dated: March 27, 2024

STEVENSON, Presiding Judge.

{¶1} Appellant, W.M. ("Father"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed his minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Father is the biological father of A.M., born May 31, 2007. The child's mother ("Mother") passed away one week after CSB filed this case. Although the trial court proceedings involved one of Mother's other children, Father is the father of only A.M. Father was established to be the biological father of A.M. in a 2009 Summit County Juvenile Court case. Few details about the 2009 case are included in the record except the juvenile court removed A.M. and other half-siblings from Mother's custody, adjudicated them neglected children, and placed them in the temporary custody of CSB for many months.

{¶3} On January 3, 2022, CSB filed a complaint to allege that A.M. was an abused, neglected, and dependent child because of Mother's behavior toward the child, which had included locking her out of the house and threatening to spray her with mace and beat her with a baseball bat. Mother was charged with domestic violence and child endangering. At that time, CSB alleged that Father had a lengthy criminal history including ten felony convictions for crimes including drug possession, domestic violence, and theft offenses. The complaint further alleged that then 14-year-old A.M. had substance abuse, mental health, and behavioral problems. Seventeen days later, CSB filed an amended complaint to allege several additional facts: Mother had recently passed away; Father was incarcerated for two felony convictions, with a scheduled release date of February 2025; and A.M.'s placement had changed. Specifically, A.M. fled from her initial placement with an adult sister and was missing for several days.

{¶4} The juvenile court later adjudicated A.M. an abused, neglected, and dependent child and placed her in the temporary custody of CSB. Because Mother was deceased and Father was incarcerated, the case plan in this case focused primarily on A.M. being provided with counseling to address her substance abuse, mental health, and behavioral problems.

{¶5} Father has been serving a six-year period of incarceration on a conviction of felonious assault with a firearm specification since before this case began. During the lifetime of A.M., Father also served prior periods of incarceration on numerous other felony convictions, but the dates of those prison terms are not included in the record. Nevertheless, it is unclear from the record whether A.M. ever resided with Father or had much of a relationship with him prior to this case. Because Father was incarcerated throughout this case, the only case plan goal for him was to attempt to "establish a relationship with [A.M.] through phone calls, when possible, and letters."

**{¶6}** Father was also required to maintain contact with the caseworker to put her in touch with any relatives who might be willing to provide a placement for A.M. and inform her about any services that he completed while in prison. Father complied with his case plan requirements by communicating with A.M. and the caseworker and engaging in services in prison. The fact remained, however, that he would continue to be incarcerated for more than three years after this case began.

**{¶7}** Upon CSB's motion, the trial court granted a first six-month extension of temporary custody to allow the agency more time to investigate relatives for potential placement of the child. At that time, A.M. was again missing from her most recent placement. Unfortunately, CSB was unable to find a suitable relative who was willing to provide A.M. with a permanent placement. Consequently, CSB later moved for permanent custody of A.M.

**{¶8}** Following an evidentiary hearing, the trial court terminated Father's parental rights and placed A.M. in the permanent custody of CSB. Father appeals and raises two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN FAILING TO GRANT A SIX-MONTH EXTENSION.

**{¶9}** Father's first assignment of error is that the trial court erred in failing to grant him a second six-month extension of temporary custody. To justify a second six-month extension of temporary custody in this case, there must have been clear and convincing evidence presented to the trial court that the additional extension was in the best interest of the child, that there has been substantial additional progress toward reunification since the first extension, and "there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise

placed in a permanent setting before the expiration of the additional extension period." R.C. 2151.415(D)(2); *see also In re A.B.*, 9th Dist. Wayne Nos. 23AP0019, 23AP0020, and 23AP0021, 2023-Ohio-3826, ¶ 31.

{¶10} The trial court explicitly denied Father's request for a second six-month extension because there had been a lack of progress on the goals of the case plan and because there was not clear and convincing evidence before the court to give it "reasonable cause" to believe that A.M. would be reunified with Father before the expiration of the extension period, which would end in January 2024. Specifically, the trial court relied on undisputed evidence that Father was then scheduled to be released from incarceration during February 2025, more than one year after the end of a potential extension period.

{¶11} On appeal, Father disputes the trial court's finding by pointing to evidence that he had applied for early release from prison. Although Father testified that he had recently applied for early release, the trial court had no evidence before it about the likelihood of Father being released early or when that would be. This Court will not fault the trial court for rejecting Father's speculative projections about early release from incarceration. *See In re E.C.*, 9th Dist. Summit No. 22355, 2005-Ohio-1633, ¶ 8.

{¶12} Moreover, Father planned to live with his fiancée in Toledo after his release from incarceration. CSB had considered the fiancée for placement of A.M. during early 2023, and the fiancée had expressed interest in having A.M. placed in her home at that time. CSB placed A.M. in a foster home in Toledo while it explored that potential placement. More recently, however, the fiancée informed CSB that she was not willing to have A.M. live in her home. CSB relocated A.M. again, as there were no other viable placement options in Toledo. In fact, CSB had exhausted all the possible placements for A.M. that had been suggested by Father.

{¶13} The evidence before the trial court did not demonstrate that reunification or another permanent placement for A.M. was likely to occur within a second extension period. As Father has failed to demonstrate that the trial court erred in denying a second six-month extension of temporary custody, his first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

> THE TRIAL COURT COMMITTED PLAIN ERROR AND REVERSIBLE ERROR WHEN IT DID NOT APPOINT AN ATTORNEY FOR THE CHILD AND SEPARATE THE GUARDIAN AD LITEM ROLE FROM THAT OF AN ATTORNEY FOR THE CHILD AFTER THE CHILD EXPRESSED A DESIRE TO HAVE A RELATIONSHIP WITH FATHER.

{¶14} Father's second assignment of error is that the trial court erred by failing to appoint independent counsel to represent A.M. because the child's wishes conflicted with the recommendation of the guardian ad litem. Throughout these proceedings, A.M. was represented by an appointed guardian ad litem, who is also an attorney, but was appointed to represent A.M. only as guardian ad litem. During the trial court proceedings, none of the parties raised an issue about the child's wishes conflicting with the recommendation of the guardian ad litem. As the trial court was not asked to rule on a motion to appoint independent counsel for the child, this Court has no obligation to address that issue for the first time on appeal. *See In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899, ¶ 18.

{¶15} Moreover, Father asserts that the trial court should have appointed a new attorney to represent A.M. because there was "an apparent conflict" between the child's expressed wishes to maintain a relationship with Father and the recommendation of the guardian ad litem that permanent custody was in the child's best interest. Juv.R. 4(C) requires the trial court to appoint separate counsel for the child only if it finds that an actual conflict exists between "the role of the Guardian ad litem and the interest or wishes of the child[.]" This Court has clarified on many

occasions that "to demonstrate a 'conflict' between the child's wishes and the guardian's recommendation that permanent custody is in the child's best interest, the record must demonstrate that the child has repeatedly and consistently expressed the affirmative desire to return to the parent's home." (Internal citations omitted.) *In re L.F.*, 9th Dist. Summit Nos. 29942 and 29954, 2021-Ohio-3431, ¶ 18.

{¶16} A.M. had previously told both the caseworker and the guardian ad litem that she did not know if she wanted to live with Father when he is released from prison. At the time of the hearing, the guardian ad litem was not aware of A.M.'s current wishes because she had again fled from her most recent placement and the guardian had not spoken to her recently. There is nothing in the record to suggest that A.M. ever said that she wanted to live with Father, much less that she had expressed that desire repeatedly or consistently. Consequently, Father has failed to demonstrate any error in the trial court's failure to appoint new counsel to represent A.M. in this case. Father's second assignment of error is overruled.

III.

{¶17} Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
SCOT STEVENSON
FOR THE COURT

CARR, J.
SUTTON, J.
CONCUR.

APPEARANCES:

ANGELINA C. GINGO, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.

JASON JORDAN, Guardian ad Litem.