[Cite as *In re D.B.*, 2024-Ohio-1965.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: D.B.
     D.S.

C.A. Nos.    30806
                  30807

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 21 10 0874
                DN 22 03 0241

DECISION AND JOURNAL ENTRY

Dated: May 22, 2024

HENSAL, Judge.

{¶1}   Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her children in the legal custody of a third party. This Court affirms.

I.

{¶2}   Mother is the biological mother of D.B., born October 16, 2007; and D.S., born November 29, 2011. D.B.'s father is incarcerated for life and did not participate in the proceedings below or on appeal. D.S.' father is unknown. D.B. was placed in the legal custody of her maternal grandmother during a dependency case in 2011.

{¶3}   In September 2021, Summit County Children Services Board ("CSB" or "the agency") received a referral asserting that Mother's then-paramour inappropriately touched D.S. While investigating the allegation of sexual abuse, the agency learned that Mother had been

charged with various felony and misdemeanor offenses, was in jail, and was expected to remain incarcerated for some time; and that D.B.'s legal custodian was using crack cocaine and had a pending warrant for her arrest. CSB filed complaints alleging that D.B. and D.S. were neglected and dependent children. At a team decision meeting held by the agency, Mother and the maternal grandmother agreed that the grandmother would vacate her home and the children would remain there in the temporary custody of their maternal aunt who also resided there. The juvenile court placed the children in their aunt's emergency temporary custody under the protective supervision of the agency.

{¶4} After a shelter care hearing, however, the juvenile court placed the children in the emergency temporary custody of CSB because the aunt had admitted to using marijuana illegally. Thereafter, in early November 2021, the agency placed both children in the home of D.B.'s paternal grandmother ("Grandmother"). Grandmother is not related to D.S. by blood.

{¶5} After adjudicatory hearings[1], the juvenile court found both children dependent and dismissed the allegations of neglect. For their initial dispositions, D.B. and D.S. were placed in the temporary custody of CSB which maintained them in Grandmother's home. The juvenile court adopted the agency's case plan as its order. Mother's case plan objectives included chemical dependency, mental health, and basic needs components.

{¶6} Mother was convicted and sentenced to prison during the cases. As the sunset date approached, Mother filed alternative motions for either temporary custody of both children to Grandmother or a six-month extension of the agency's temporary custody. Mother asserted that

---

[1] Due to service issues in D.S.' case regarding John Doe, the agency dismissed and refiled its complaint regarding D.S. Accordingly, the children's adjudicatory and initial dispositional hearings occurred at different times.

she expected to be released from prison within two months and the extension of time would allow her to work on her case plan objectives.

{¶7} D.B. and D.S. filed a motion requesting they be placed in the legal custody of Grandmother. Prior to D.S.' adjudication, CSB had moved for legal custody of D.B. to Grandmother. The agency later joined in the children's motion for legal custody of both to Grandmother.

{¶8} After an evidentiary hearing, the magistrate granted the children's and agency's motions for legal custody of both D.B. and D.S. to Grandmother. The magistrate denied Mother's alternative motions which would have extended the pendency of the cases. Mother timely objected to the magistrate's decision.

{¶9} The juvenile court overruled Mother's objection. It denied Mother's motions for temporary custody to Grandmother or a six-month extension of the agency's temporary custody. The trial court granted CSB's and the children's motions for legal custody to Grandmother. Mother filed a timely appeal in which she raises three assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

> THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED LEGAL CUSTODY OF THE MINOR CHILDREN TO [GRANDMOTHER] AS [CSB] FAILED TO DEMONSTRATE WITH CLEAR AND CONVINCING EVIDENCE THAT IT WAS IN THE CHILDREN'S BEST INTEREST. THE TRIAL COURT'S DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶10} Mother argues that the juvenile court's judgment awarding legal custody of the children to Grandmother is against the manifest weight of the evidence. This Court disagrees.

{¶11} As an initial matter, Mother argues that an award of legal custody must be based on clear and convincing evidence. Mother cites an incorrect burden of proof, as it is well settled:

> On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence. Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest. Thus, our standard of review is whether a legal custody decision is against the manifest weight of the evidence.

(Internal citations and quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7.

{¶12} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶13} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, at ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. In that regard, the juvenile court is guided by the best interest factors enunciated in Revised Code Section 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors

include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in Section 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16.

{¶14} In addition, the juvenile court may also look to the best interest factors in Section 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17. While some factors overlap with those above, others include the child's adjustment to his or her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶15} D.B. and D.S. were 14 and 9 years old, respectively, when CSB filed its complaints below. D.S. had been in Mother's legal custody until the agency removed him shortly before his tenth birthday. D.B., however, had been removed from Mother's home and placed in the legal custody of her maternal grandmother when she was three or four years old.

{¶16} The children share a close sibling bond and wish to reside together. They had been living in Grandmother's home for about 16 months at the time of the hearing. They are comfortable and well adjusted to that environment. D.B. is particularly close with Grandmother with whom she shares a biological connection. D.S. initially felt like he was a burden on a caregiver with whom he has no familial relationship, but he has come to recognize Grandmother as someone willing to assume the role of his natural grandparent. He feels loved by Grandmother and has acknowledged that she provides "excellent" care for him and his sister.

{¶17} Grandmother is committed to providing a permanent home for both children. She ensures that D.B. maintains a relationship with her father who is serving a long-term prison sentence. In addition, Grandmother facilitates visits and ongoing relationships for the children with their maternal grandmother and aunt. She encourages the children to stay in touch with Mother.

{¶18} Mother was in jail when these cases began but was transferred to prison after convictions for various felony offenses. She has remained in regular contact with the children via phone calls during her incarceration. Mother and the children share a bond.

{¶19} D.B. told the guardian ad litem that she wants to continue living in Grandmother's home because she is comfortable, familiar with the environment, and all her needs are met in that home. The guardian ad litem testified that D.S. initially hoped to live with his maternal aunt, a family member with whom he is comfortable and has a familial relationship. CSB did not approve the aunt for placement due to her then-illegal use of marijuana. D.S. was clear that he wants to live wherever his sister D.B. is residing. He reported that he likes living with Grandmother where he has everything he needs. The guardian ad litem opined that legal custody to Grandmother would meet the best interest of both children because her home is appropriate, meets all the children's needs, provides stability, and Grandmother facilitates the children's relationships with other family members.

{¶20} D.B. experienced a custodial disruption as a young child. Both children were in CSB's temporary custody for almost a year and a half during these cases and require permanency and stability. Grandmother executed a statement of understanding for legal custody and testified that she was willing and able to provide a home for both children until they reach the age of majority.

{¶21} The caseworker and guardian ad litem testified that Grandmother's home is safe, stable, and appropriate. Grandmother supports D.S.' participation in counseling services to address his exposure to sexual abuse by Mother's prior paramour and his ongoing adjustment issues. Both children have done well in school throughout their placement with Grandmother.

{¶22} Mother was serving a prison term at the time of the February 2023 hearing, with an anticipated release date near the end of that year. Although she testified she believed her attorney in her criminal case had filed a motion for judicial release, there was no record of that motion having been filed. Moreover, while Mother testified that the judge who presided over her criminal case guaranteed her early release from prison, any judicial release, particularly with no motion pending, was speculative. Accordingly, the evidence demonstrated that Mother was not available to reassume legal custody within the near future. *See In re A.M.*, 9th Dist. Summit No. 30858, 2024-Ohio-1152, ¶ 11 (noting that "speculative projections about early release from incarceration" do not provide evidentiary support regarding a parent's release from prison).

{¶23} Mother has argued that the juvenile court erred by granting legal custody of the children to Grandmother because she made significant progress on her case plan objectives. While relevant to the issue of best interest of the children, a parent's case plan compliance is not dispositive. *In re M.B.*, 9th Dist. Summit No. 30383, 2023-Ohio-1804, ¶ 15.

{¶24} Mother's case plan objectives addressed mental health, substance abuse, and basic needs. She testified that she has been engaging in mental health counseling in prison. The only drug screen CSB requested of her was negative for illegal substances. Mother is working four days a week in prison, although there was no evidence of her earnings.

{¶25} Mother testified that she has secured housing for herself upon release from prison in a domestic violence shelter in Columbus, more than two hours away from where the children

have lived in Summit County.  She asserted that the children could stay with her in the shelter.
She testified that she also found employment upon her release, although she could not provide
many details except that the job was in Summit County.  She did not explain how she would travel
between the shelter in Columbus and her job in Summit County every day, or what plans she had
for the children in her absence.

{¶26}  The guardian ad litem opined that displacing the children from Grandmother's
home, where they were well settled and comfortable, and moving them to a shelter environment
in an area unfamiliar to them would not be in their best interest.  A shelter is necessarily a short-
term housing situation, so the children would expect to face further disruptions to their living
arrangements, schools, service providers, and established friendships.

{¶27}  Based on a thorough review of the record, this Court concludes that this is not the
exceptional case in which the trier of fact clearly lost its way and created a manifest miscarriage
of justice by granting legal custody of D.B. and D.S. to Grandmother.  The children are safe and
comfortable in Grandmother's home where all their needs are met.  Grandmother encourages and
facilitates the children's relationships with family members, including Mother.  D.B. and D.S.
want to reside together and are content to remain with Grandmother.  The guardian ad litem opined
that legal custody to Grandmother is in the children's best interest.  The children had been in
custodial limbo for almost a year and a half and require permanency.  Mother's anticipated release
from prison would not occur for another seven months.  Her plans for housing and employment
upon release were inconsistent and not well developed.  Accordingly, the children and CSB
established by a preponderance of the evidence that legal custody to Grandmother was in the
children's best interest.  Under these circumstances, the juvenile court's judgment is not against
the manifest weight of the evidence.  Mother's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT DENIED MOTHER['S] MOTION FOR FIRST SIX-MONTH EXTENSION.

{¶28} Mother argues that the juvenile court erred by denying her motion for a six-month extension of temporary custody. This Court disagrees.

{¶29} As stated above, the juvenile court determines a motion for legal custody solely in consideration of the best interest of the children. *In re J.M.*, 9th Dist. Summit No. 30258, 2022-Ohio-3638, ¶ 32, citing *In re K.H.*, 2016-Ohio-1330, at ¶ 12. We have further repeatedly held that "if legal custody to a nonparent is in the best interest of the child[ren], an extension of temporary custody is not." *In re A.P.*, 9th Dist. Summit No. 30056, 2022-Ohio-276, ¶ 9, citing *In re A.M.*, 9th Dist. Lorain No. 16CA010995, 2017-Ohio-7653, ¶ 41.

{¶30} The juvenile court may only extend temporary custody for up to six months for the first time if it finds, by clear and convincing evidence, all of the following: "the extension is in the best interest of the child[ren], there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child[ren] will be reunified with one of the parents or otherwise permanently placed within the period of extension." R.C. 2151.415(D)(1). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶31} Because an award of legal custody of the children to Grandmother is in the children's best interest, any extension of temporary custody necessarily is not. Moreover, Mother's release from prison was not scheduled until seven months after the date of the legal

custody hearing. She failed to prove that she had moved for judicial release and her prospects for early release were speculative. Accordingly, there was no reasonable cause to believe that the children could be reunified with Mother within the period of extension. Therefore, assuming without deciding that Mother demonstrated significant progress on her case plan objectives, there was no clear and convincing evidence to support the remaining two necessary requirements to support an extension of temporary custody. Mother's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

> THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT GRANTED LEGAL CUSTODY TO [GRANDMOTHER] (A NON-RELATIVE OF MINOR CHILD D.S.) WHEN [CSB] DID NOT PROVIDE REASONABLE REUNIFICATION EFFORTS.

{¶32} Mother argues that CSB did not use reasonable efforts to attempt to reunify the children with her. This Court disagrees.

{¶33} Parents have a substantial right under law to raise their children and are entitled to all legally permissible procedural and substantive protections. *In re K.J.*, 9th Dist. Summit No. 29915, 2021-Ohio-4413, ¶ 18. Those protections "include the child welfare agency's obligation to make reasonable efforts to reunify children with one or both parents." *Id.* Section 2151.419(A) places the burden on the agency to demonstrate it has made reasonable efforts to facilitate reunification.

{¶34} Chapter 2151 of the Revised Code does not define "reasonable efforts." Ohio courts have come to construe that term as "[t]he state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed[.]" (Internal quotations omitted.) *In re J.M.*, 9th Dist. Summit No. 30258, 2022-Ohio-3638, ¶ 35, quoting *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28, quoting Will L. Crossley, *Defining Reasonable Efforts: Demystifying the State's Burden Under Federal Child Protection Legislation*,

12 B.U.Pub.Int.L.J. 259, 260 (2003). When making a reasonable efforts determination, "'the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute.'" *In re J.M.* at ¶ 35, quoting *In re C.M.*, 9th Dist. Summit No. 24380, 2009-Ohio-943, ¶ 21. "In determining whether reasonable efforts were made, the child's health and safety shall be paramount." R.C. 2151.419(A)(1).

{¶35} Section 2151.412(A) requires CSB to "prepare and maintain a case plan for any child to whom the agency is providing services" under various circumstances, including when the agency has temporary custody of the child. *See also* Ohio Adm.Code 5101:2-38-05(A). Parents are necessary parties to the case plan. *Id.* at (C)(1). Moreover, this Court recognizes:

> The case plan is the tool used by the agency to facilitate family reunification efforts. *In re H.S.*, 9th Dist. Summit Nos. 28944 and 28948, 2018-Ohio-3360, ¶ 18. In fact, the overriding purpose of the case plan is to allow the agency to assist the parents in remedying the conditions underlying a child's removal so that the child can be returned safely to one or both parents' custody. *In re S.R.*, 9th Dist. Summit No. 27209, 2014-Ohio-2749, ¶ 45.

*In re K.J.* at ¶ 18.

{¶36} CSB created a case plan for the children which included mental health, substance abuse, and basic needs objectives for Mother. Mother argues that the agency failed to make reasonable reunification efforts because the caseworker "did absolutely NOTHING" during the last six months of the cases while Mother was in prison. She reasons that, because she "substantially completed her case plan[,]" and the caseworker did not obtain her mental health records from prison, the agency deprived her of reasonable reunification efforts.

{¶37} The caseworker testified that he obtained a release of information from Mother and remained in ongoing communications with her various case managers in prison, requesting updates on Mother's status and what she was doing. He testified that each time Mother changed pods in prison, she was assigned a new case manager and that it took each of those people time to

understand that there was an effective release of information on file. He admitted that Mother may have been involved in mental health services in prison but that she did not inform him of her involvement. The caseworker testified that Mother only recently informed him that the prison required a release of information specific to mental health services before it would share such information. The caseworker sent a release of mental health information to the prison but had not yet received an update on Mother's mental health services and progress because either Mother had not yet signed the form, or the prison had not obtained her executed release.

{¶38} In addition to creating a case plan and maintaining contact with Mother's case managers in prison, the caseworker maintained contact with the parties, conducted home visits where the children were placed, made referrals for services for the various parties, and assessed family members for placement. Mother's ongoing incarceration prevented her from establishing and maintaining an appropriate home and obtaining employment or other financial resources to allow her to provide for the children's basic needs. It also delayed the caseworker's ability to obtain information relevant to Mother's engagement in services, her progress, and any need to modify objectives based on newly identified concerns.

{¶39} The evidence indicates that CSB used reasonable efforts throughout these cases with the health and safety of the children in mind. *See* R.C. 2151.419(A)(1). Mother's unsubstantiated argument that the caseworker did "nothing" during the last six months of the cases, coupled with her own incarceration which precluded her from achieving the important goal of demonstrating her ability to meet the children's basic needs, "do not impugn CSB's reasonable reunification efforts." *See In re J.E.*, 9th Dist. Summit No. 30174, 2022-Ohio-2403, ¶ 31. Mother's third assignment of error is overruled.

13

III.

**{¶40}** Mother's three assignments of error are overruled.  The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

STEPHEN M. GRACHANIN, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and MARRETT W. HANNA, Assistant Prosecuting Attorney, for Appellee.