[Cite as *In re A.P.*, 2022-Ohio-276.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: A.P.

C.A. No. 30056

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. DN 20 02 0160

DECISION AND JOURNAL ENTRY

Dated: February 2, 2022

SUTTON, Judge.

{¶1} Appellant, N.C. ("Mother"), appeals a judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of the child's paternal grandmother ("Grandmother"). This Court affirms.

I.

{¶2} Mother is the biological mother of A.P., born March 16, 2019. On February 18, 2020, Summit County Children Services Board ("CSB") filed a complaint, alleging that A.P. was an abused and dependent child because it had received multiple referrals that Mother often fell asleep and left the infant unattended, and she had failed to promptly seek medical treatment for the child as needed. The allegations focused primarily on Mother's low level of cognitive functioning and her multiple untreated mental health problems. Mother later stipulated to an adjudication of dependency and A.P. was placed in the temporary custody of Grandmother with an order of protective supervision by CSB.

{¶3} In addition to obtaining and maintaining stable income and housing, the court-ordered case plan required Mother to address her mental health problems and cognitive limitations by obtaining a mental health assessment and following all treatment recommendations. Although Mother obtained a mental health assessment, she did not consistently follow through with the recommended individual counseling or medication management. Mother switched counselors repeatedly and did not attend consistently. CSB was concerned that Mother had not stayed with any counselor long enough to make progress in addressing her anxiety and instability. Moreover, although CSB had recommended a counseling agency that specialized in helping people with cognitive delays, Mother chose to go elsewhere.

{¶4} On January 7, 2021, CSB moved the trial court to place A.P. in the legal custody of Grandmother. Mother alternatively requested an extension of temporary custody. Following a hearing on the competing motions, the magistrate decided that A.P. should be placed in the legal custody of Grandmother and that protective supervision should be terminated. Mother filed objections to the magistrate's decision, which were overruled by the trial court. The trial court placed A.P. in the legal custody of Grandmother and terminated the prior order of protective supervision. Mother appeals and raises one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN AND REVERSIBLE ERROR WHEN IT GRANTED LEGAL CUSTODY OF THE MINOR CHILD TO [GRANDMOTHER] AND DENIED MOTHER'S MOTION FOR A SIX-MONTH EXTENSION AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT IN THE BEST INTEREST OF THE CHILD.

{¶5} Mother conceded that she was not prepared to provide A.P. with a stable home at the time of the hearing. Her sole assignment of error is that the trial court should have extended

temporary custody for six months, rather than place A.P. in the legal custody of Grandmother. Mother asserts that it was in A.P.'s best interest to allow Mother more time to work on the reunification goals of the case plan. We disagree.

{¶6} An award of legal custody must be supported by a preponderance of the evidence. "Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value." (Internal quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7. In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations and quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶7} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. The juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In*

*re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, and the child's need for permanence. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16.

{¶8} The juvenile court may also consider the best interest factors in R.C. 3109.04(F)(1). *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17. While some factors overlap with those set forth in R.C. 2151.414(D)(1), others include the child's adjustment to his or her environment; the mental and physical health of all persons involved; and the proposed custodian's likelihood to honor and facilitate visitation or parenting time. R.C. 3109.04(F)(1).

{¶9} In determining whether to grant a first six-month extension of temporary custody, the trial court was also required to consider the best interest of the child. This Court has held that if legal custody to a nonparent is in the best interest of the child, an extension of temporary custody is not. *See*, *e.g.*, *In re A.M.*, 9th Dist. Lorain No. 16CA010995, 2017-Ohio-7653, ¶ 41. Moreover, the court would have had authority to grant a first six-month extension of temporary custody only if it also found, by clear and convincing evidence, that "there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents * * * within the period of extension." R.C. 2151.415(D)(1). As will be explained below, the evidence demonstrated that Mother had not made significant progress on the case plan and did not support a reasonable belief that A.P. would be reunified with Mother during the extension period.

{¶10} Mother's interaction with A.P. during this case was limited to supervised visitation because she had not adequately addressed her mental health problems. Mother

attended visits only sporadically and often did not stay for the entire visit. Moreover, Mother went to Oklahoma for two weeks during this case, which caused her to miss more than two weeks of visits because of Covid-19 quarantine requirements.

{¶11} Because A.P. was not yet two years old at the time of the hearing, the guardian ad litem spoke on his behalf. The guardian ad litem opined that legal custody to Grandmother was in the child's best interest. The evidence demonstrated that Grandmother had been ensuring that A.P. regularly participated in a program at Help Me Grow to address his developmental delays and was also working with him at home to implement what he was learning in the program. Grandmother regularly read to A.P. and reinforced his growing vocabulary. Both the caseworker and the guardian ad litem testified that A.P. had made great progress with Grandmother in addressing his developmental delays.

{¶12} A.P. had been living outside Mother's custody for almost one year. When considering the child's custodial history under R.C. 2151.414(D), this Court emphasized in *In re Smith*, 9th Dist. Summit No. 20711, 2002 WL 5178, * 5 (Jan. 2, 2002), that "the time period in and of itself cannot be held against the parent without considering the reasons for it and the implications that it had on this child." In this case, the reason that A.P. had remained placed outside Mother's custody was because Mother needed to address her mental health problems, yet she did little to work toward reunification during this time. The caseworker testified that, during the one year that A.P. lived outside Mother's custody, Mother made no progress on the case plan and "nothing has changed." A.P., however, was doing well outside Mother's custody, but was still in a temporary placement and the evidence did not suggest that he could return home anytime soon. A.P. needed a legally secure permanent placement, which Grandmother was willing and able to provide for him.

{¶13} Next, considering the additional relevant factors in R.C. 3109.04(F), the evidence demonstrated that A.P. had adjusted to living in Grandmother's home, where he had been living for more than five months. *See* R.C. 3109.04(F)(1)(d).

{¶14} There was no evidence that Grandmother had any mental or physical health problems that affected her ability to provide an appropriate home for A.P. *See* R.C. 3109.04(F)(1)(e). Mother, however, admitted that she suffered from mental health problems, but she did not consistently engage in counseling or take her psychiatric medication as prescribed. During this case, Mother was once hospitalized for psychiatric treatment, but it was unclear whether she followed up with the treatment that had been recommended. On two other occasions during the month before the hearing, Mother reached out to a crisis center, stating that she was psychotic, depressed, and was having delusions. The crisis center was unable to convince Mother to engage in treatment, however.

{¶15} At the hearing, Mother testified that she had failed to consistently attend counseling because she sometimes mixed up the dates and the counselors never called her back to reschedule appointments. She conceded, however, that she had changed her phone number and might not have apprised the service providers. Mother testified that her biggest mental health problem was anxiety and that she needed medication. She had been prescribed several different psychiatric medications but had not continued taking any of them because she did not like the side effects. Mother testified that she had started a new medication two weeks before the hearing, but it was too soon to determine whether the medication would control her symptoms, or she would continue taking it.

{¶16} Finally, there was evidence before the trial court that Grandmother was likely to facilitate visitation between Mother and A.P., as she had done throughout this case. *See* R.C.

3109.04(F)(1)(f). Grandmother explicitly recognized that Mother would retain the residual parental right to visit her child and agreed that she would continue to honor and facilitate Mother's visitation with AP.

{¶17} After reviewing the evidence presented at the hearing, this Court cannot conclude that the trial court lost its way in determining that it was in the best interest of A.P. to be placed in the legal custody of Grandmother. Mother's assignment of error is overruled.

III

{¶18} Mother's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

CARR, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

SHUBHRA AGARWAL, Guardian ad Litem.