[Cite as *In re J.N.*, 2025-Ohio-936.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: J.N.

C.A. No. 31176

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. DN 23 02 0074

DECISION AND JOURNAL ENTRY

Dated: March 19, 2025

FLAGG LANZINGER, Presiding Judge.

{¶1} Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that placed her child in a planned permanent living arrangement ("PPLA") with Summit County Children Services Board ("CSB"). This Court affirms.

I.

{¶2} Mother is the biological mother of J.N., born August 30, 2007. The child's biological father played a very limited role in his life and did not participate in the proceedings below or appeal the judgment. Mother also has a minor daughter Je.N., born January 13, 2012; and a now-adult daughter. Although Mother was the legal custodian of all three children, the children lived with their maternal grandmother ("Grandmother"), while Mother resided elsewhere in a friend's home. Mother would generally pick up J.N. and have him spend most nights with her, while her daughters slept at Grandmother's home.

{¶3} In February 2023, when J.N. was 15 years old and Je.N. was eleven years old, J.N. engaged in sexual behavior in front of Je.N. Mother reported the incident to the police who recommended that Mother enroll the child in services to address the issue. The police declined to initiate delinquency proceedings against J.N. based on the report. Summit County Children Services Board ("CSB" or "the agency") investigated the situation and filed a complaint alleging that J.N. was a dependent child. Although the agency had filed complaints in 2013, resulting in the adjudications of all three children, CSB did not file complaints regarding the girls in 2023.

{¶4} Mother stipulated to J.N.'s removal from home, his adjudication as a dependent child, and a no contact order between the child and Je.N. After a dispositional hearing, the juvenile court placed J.N. in the temporary custody of CSB and adopted the agency's case plan as an order. The case plan required that J.N. engage in counseling to address his sexual behavioral issues, and that Mother engage in family counseling when J.N.'s counselor deemed that necessary. Mother was also required to obtain and maintain appropriate housing and a source of income to meet the child's basic needs.

{¶5} CSB placed J.N. in a therapeutic foster home. He began receiving sexual offender counseling at The Village Network. Despite regular engagement in services, J.N. made little progress and did not gain any apparent insight relating to his inappropriate sexual behavior with his younger sister. Due to J.N.'s limited progress, his counselor did not recommend starting family counseling. Mother was able to visit with the child in the community. Those visits went well, although they occurred sporadically because of Mother's transportation issues.

{¶6} CSB filed a sunset dispositional motion asking the trial court to place the then-16-year-old J.N. in PPLA. Mother moved for a first six-month extension of temporary custody. After an evidentiary hearing, the magistrate made findings of fact; denied Mother's motion for an

extension of temporary custody; and granted CSB's motion for PPLA, albeit without reference to any specific statutory provision. Mother timely objected to the magistrate's decision.

{¶7} In her objection, as to PPLA, Mother argued only that the evidence did not support the disposition under the requirements of R.C. 2151.353(A)(5)(b). She further argued that the magistrate erred by denying her motion for a six-month extension of temporary custody. In its opposition brief, CSB argued that the evidence clearly and convincingly supported an award of PPLA pursuant to R.C. 2151.353(A)(5)(c), and that the magistrate did not err in denying Mother's request for an extension of temporary custody. The juvenile court agreed with CSB. It overruled Mother's objection, denied her motion for a six-month extension of temporary custody, and granted PPLA pursuant to R.C. 2151.353(A)(5)(c). Mother timely appealed, raising two assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

THE JUVENILE COURT ERRED IN PLACING J.N. IN A PLANNED PERMANENT LIVING ARRANGEMENT.

{¶8} Mother argues that the juvenile court erred by placing J.N. in PPLA because the evidence does not support that disposition under an analysis of either R.C. 2151.415(C)(1)(c) or R.C. 2151.353(A)(5)(c). Because Mother failed to raise these challenges in her objection, she has not preserved these issues for appeal. Accordingly, this Court declines to address her argument.

{¶9} It is well settled that "the juvenile court derives its sole authority in dependency, neglect, and abuse cases from the comprehensive statutory scheme set out in R.C. Chapter 2151." *In re B.H.*, 2021-Ohio-4152, ¶ 25 (9th Dist.). Both R.C. 2151.415(A)(5)/(C)(1) and R.C. 2151.353(A)(5) authorize the juvenile court to place a child in PPLA if the public children services agency requesting the disposition proves by clear and convincing evidence that the child is 16

years of age or older, that PPLA is in the best interest of the child, and that one of three additional, alternative circumstances exist. R.C. 2151.415(C)(1)(a)/(b)/(c) and R.C. 2151.353(A)(5)(a)/(b)/(c). While the circumstances listed in subsections (a), (b), and (c) under each statute share some similarities, they are not identical. This Court makes no determination at this time whether the procedural posture of the case below implicated the dispositional options under R.C. 2151.415 or under R.C. 2151.353, as that issue is not properly before us.

{¶10} The magistrate did not cite any statutory provisions in the dispositional decision. When Mother objected, she limited her argument to the specific grounds for PPLA set forth in R.C. 2151.353(A)(5)(b). Although she quoted the grounds in subsections (a), (b), and (c), she construed the magistrate's findings as "most logically track[ing] (A)(5)(b)." This Court takes no position on Mother's interpretation of the magistrate's factual findings. The critical point is that, in the absence of citation to any statutory provisions permitting the juvenile court to grant PPLA, Mother chose to craft a narrow challenge to the dispositional award, focusing on only one ground enumerated in only one of two PPLA statutes.

{¶11} In its brief in opposition to Mother's objection, CSB focused on a different finding by the magistrate and argued that that finding supported the award of PPLA under R.C. 2151.353(A)(5)(c). The agency did not interpret the magistrate's decision as having based the award of PPLA on subsection (b).

{¶12} Juv.R. 40(D)(3)(b)(ii) provides that "[a]n objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Juv.R. 40(D)(3)(b)(iv) states that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to

that finding or conclusion as required by Juv.R. 40(D)(3)(b)." The failure to raise an issue in an objection forfeits all challenges to that issue except for a claim of plain error. *In re B.C.*, 2014-Ohio-2748, ¶ 24 (9th Dist.); *see also In re N.B.*, 2025-Ohio-528, ¶ 23 (9th Dist.) ("Because Mother stated a specific basis for her objections, she has forfeited her right to raise the additional grounds she now asserts on appeal.").

**{¶13}** In this case, Mother challenged the award of PPLA in her objection, arguing that the evidence did not support the award under R.C. 2151.353(A)(5)(b). She now argues on appeal that the evidence did not support an award of PPLA under R.C. 2151.353(A)(5)(c) and R.C. 2151.415(C)(1)(c). As she did not raise these grounds in her objection, she has forfeited the ability to raise them on appeal. Moreover, as she has not argued plain error, this Court will not make such an argument on her behalf. *See In re B.C.* at ¶ 24 (9th Dist.). Accordingly, Mother's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

> THE JUVENILE COURT ABUSED ITS DISCRETION IN DENYING [MOTHER] A FIRST SIX-MONTH EXTENSION [OF TEMPORARY CUSTODY].

**{¶14}** Mother argues that the juvenile court erred by denying her a first six-month extension of temporary custody. This Court disagrees.

**{¶15}** R.C. 2151.415(D)(1) establishes the standard regarding the propriety of a first six-month extension of temporary custody, providing in relevant part:

> The court may extend the temporary custody order of the child for a period of up to six months, if it determines at the hearing, by clear and convincing evidence, that the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension.

A juvenile court has the authority to grant an extension of temporary custody only if it finds that all three of the statutory requirements have been met. *See In re A.P.*, 2022-Ohio-276, ¶ 9 (9th Dist.).

{¶16} In this case, Mother's failure to prove by clear and convincing evidence that she had made significant progress on her case plan objectives precluded the trial court from granting a first extension of temporary custody. Mother's first case plan objective required her to participate in joint counseling with the child when his counselor deemed that appropriate. The caseworker testified that joint counseling was critical to allow Mother and J.N. "to process rules, boundaries, expectations if [the child] was close to returning home to [Mother's] custody." Joint counseling never began, however, as the child had not made adequate progress or gained insight into the significance of the incidents involving Je.N. The guardian ad litem testified that J.N. had not yet been forthcoming about the sexual behaviors underlying the incident. Although Mother was not responsible for the lack of joint counseling, it remained a critical precursor to reunification, and both the caseworker and guardian ad litem believed that J.N. was not close to demonstrating enough progress to incorporate Mother in the child's counseling sessions. Accordingly, Mother failed to show by clear and convincing evidence that either she or J.N. had made significant progress on the child's and Mother's first case plan objective.

{¶17} Mother's other case plan objective required her to obtain and maintain suitable housing. That encompassed establishing a safe and stable home for herself and her children. Throughout most of the case, Mother was homeless, living in a domestic violence shelter, or staying with Grandmother. None of those options offered stability for her or her children. Two weeks prior to the hearing, however, Mother rented a home with her father ("Grandfather"). The caseworker and guardian ad litem agreed that the home initially appeared to be appropriate.

Grandfather would be contributing financially to the household and providing supervision of the children. Both Mother and Grandfather were on the lease. Mother admitted to the caseworker that she would not be able to afford to live in the home without Grandfather's additional financial assistance.

{¶18} Shortly after moving into the home, however, Grandfather physically assaulted Mother twice while intoxicated, breaking Mother's nose during the second altercation. The caseworker learned that Grandfather had a history of committing violent acts after drinking. Mother insisted that Grandfather vacate the home, which meant she would no longer be able to rely on his financial support. Mother testified that she earns $500 per week and that her rent, not including utilities, is $1050 per month. She testified that it would be difficult to maintain housing without Grandfather's contribution, "but somehow [she would] figure it out." Mother could not articulate a plan for meeting her rent obligation. Both the caseworker and guardian ad litem testified as to their doubts that Mother would be able to financially maintain the home to ensure a stable environment for her children, particularly in light of her historical inability to maintain housing and admission that she was relying on Grandfather's financial contribution to the household.

{¶19} The caseworker and guardian ad litem each also expressed serious concerns about Mother's ability to provide a safe home for the children, even if she somehow managed to make her rent and utility payments. Mother had planned to have Grandfather supervise the children while she worked, and they were at home after school. Everyone agreed that J.N. should not be allowed to have contact with Je.N. without supervision. Given Grandfather's assaults on Mother, he was no longer a viable option for supervision. Mother admitted that she had not devised any alternative supervision plans and "[could not] really plan ahead" at the moment. While she thought

either J.N. or Je.N. could come to her office at work after school, she had not started to think about a summertime supervision plan. Mother thought J.N. might be eligible to participate in after-school services in the community through the county Board of Developmental Disabilities, but she admitted the child had not yet formally been assessed and deemed eligible. The guardian ad litem further testified that J.N.'s and Je.N.'s bedrooms in Mother's current home would be next to each other, and he expressed concerns for supervision during the nighttime.

{¶20} Given J.N.'s lack of progress in counseling, which impacted his ability to address his inappropriate sexual behaviors with his sister and make insightful joint counseling with Mother feasible, there was minimal progress on the child's case plan objective and none on Mother's first case plan objective. As to her second case plan objective, Mother's failure to obtain housing until immediately prior to the hearing, and then to lose the necessary financial support of Grandfather to maintain the home, raised serious questions about her ability to maintain her current housing. Moreover, she could not ensure the home would remain safe for her children because she had not developed a viable supervision plan. Accordingly, Mother failed to prove by clear and convincing evidence that there had been significant case plan progress. Under those circumstances, the juvenile court did not err by denying Mother's motion for a first six-month extension of temporary custody. Mother's second assignment of error is overruled.

### III.

{¶21} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

 

JILL FLAGG LANZINGER
FOR THE COURT

CARR, J.
STEVENSON, J.
CONCUR.


APPEARANCES:

JOSEPH SHELL, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and AARON B. CAMPBELL, Assistant Prosecuting Attorney, for Appellee.